## Richmond

JOHN G. DECKER

v.

JOY FRANCES McFADIN DECKER

No. 1524-92-3

Decided September 7, 1993

COUNSEL

James F. Stutts (Gregg A. Scoggins; James H. Ford; McGuire, Woods, Battle & Boothe, on briefs), for appellant.

Harry F. Bosen, Jr.; Charles B. Phillips (Harry F. Bosen, Jr., P.C.,; Phillips, Doherty & Swanson, on brief), for appellee.

OPINION

**DUFF, J.**—John G. Decker, husband, and Joy Frances McFadin Decker, wife, appeal the trial court's final decree, which adopted the commissioner's findings on various issues involved in the equitable distribution of the parties' marital estate. In this opinion, although we at times will refer to the commissioner's report, we are fully cognizant that it is the final decree of divorce, which approved the report, from which this appeal is taken. We affirm and hold that (1) Code § 20-107.3, as amended in 1991, was properly considered by the commissioner; (2) attributing twenty percent of the post-marital increase in the Pannill Knitting Company stock to the marital efforts of husband is supported by evidence in the record; (3) refusing to award husband credit for purchasing wife's automobile was not improper; (4) refusing to permit certain testimony offered by wife's witnesses was not an abuse of discretion; (5) husband did not dissipate the marital estate

when maintaining his usual gift-giving scheme to family members; (6) no error was committed in allocating the 1990 tax refund to the hus-. band; and (7) non-economic fault is not a factor in determining an equitable distribution of the marital estate.

John Decker, appellant, and Joy McFadin Decker, appellee, were married in Martinsville on December 27, 1978. No children were born of the marriage.

At the time of the marriage, the husband was serving as chief operations officer at Pannill Knitting Company (PKC), then a publicly held apparel company in Martinsville, Virginia. In 1975, he became a member of Pannill Knitting's Board of Directors. In 1977, husband was appointed executive vice president and chief operating officer, and in March 1985 he was named president of PKC.

Although wife was not employed during the marriage, she had served as husband's secretary from July 1972 until January 1978.

In early 1984, approximately fifty percent of Pannill Knitting's common stock was owned by William Pannill and his six sisters. The remainder of the stock was publicly owned. Husband owned approximately 1.1 percent of the company's common stock in 1984. At that time the stock underwent a 15-for-1 split; existing stockholders received fifteen shares of stock in exchange for each of their previously held shares, after the leveraged buyout of the company.

Husband had accumulated over 4,383 shares of Pannill Knitting stock prior to their marriage. He bought an additional 510 shares in early 1979. During the course of the marriage, the value of the husband's stock appreciated to over $10 million due to the 1984 leveraged buyout and the subsequent 15-for-1 stock split.

On August 28, 1989, the parties separated. On that date, wife filed her bill of complaint for divorce against husband, and later amended her complaint for a divorce on the grounds of cruelty or living separate and apart for more than one year. Wife also asked for an equitable distribution of marital property pursuant to Code § 20-107.3. Husband filed an answer and cross-bill requesting a divorce on the ground of desertion.

On January 24, 1991, the matter was referred to a commissioner in chancery, who received testimony on issues relating to the grounds of

ution of the marital estate.

The commissioner received evidence during an ore tenus hearing. On December 12, 1991, the commissioner issued his report in which he recommended granting the wife a divorce on the ground of cruelty, and a total award, including a cash payment and division of property valued at $4,826,522.14, out of the marital estate valued at $21,185,434.73.

Both parties filed exceptions to the report of the commissioner, which were heard before the Circuit Court of Henry County. The trial court entered its final decree on June 30, 1992, adopting the conclusions and recommendations of the commissioner.

## I.

■ Both parties agree that property formerly classified as separate which has been commingled with marital property is thereby transmuted into marital assets. *See Smoot v. Smoot,* 233 Va. 435, 441, 357 S.E.2d 728, 731 (1987). The question here concerning the PKC stock, which is now concededly marital property due to transmutation during marriage, is whether the trial court, by affirming the commissioner's report, properly assigned the respective burdens of proof as to the appreciation in value of the stock.

Husband contends that the trial court erred because it applied the burden of proof provisions of Code § 20-107.3(A)(3)(a), which provisions did not become effective until 1991.[1] Phrased differently, husband argues that the trial court erred in requiring him to prove that his marital efforts did *not* contribute to the appreciation of his pre-marital shares of PKC stock.

The wife denies that the commissioner made any ruling as to the burden of proof on active appreciation questions by applying the 1991

---

[1] Code § 20-107.3(A) (3) (a) provides in pertinent part:

In the case of the increase in value of separate property during the marriage, such increase in value shall be marital property only to the extent that marital property or the personal efforts of either party have contributed to such increases, provided that any such personal efforts must be significant and result in substantial appreciation of the separate property. . . .

For purposes of this subdivision, the nonowning spouse shall bear the burden of proving that (i) contributions of marital property or personal effort were made and (ii) the separate property increased in value. *Once this burden of proof is met, the owning spouse shall bear the burden of proving that the increase in value or some portion thereof was not caused by contributions of marital property or personal effort.* (emphasis added).

amendment to Code § 20-107.3(A)(3)(a). She asserts that a fair reading of the entire commissioner's report shows that he used the 1991 law, by analogy, as one relevant factor in arriving at a fair and equitable apportionment of the marital estate. Citing *Smoot*, wife argues that such analogous consideration of the 1991 amendment was proper. She contends that *Smoot* used a "source of funds" doctrine, despite the fact that Virginia did not follow the doctrine until 1990. She further contends that the commissioner's use of the source of funds rule merely by analogy does not constitute a ruling of law on the burden of proof question under pre-1990 Virginia law.

We agree with the wife's analysis of this initial issue. The trial court approved the commissioner's findings and recommendations which consisted of 117 pages. The report must be considered in its entirety without individual sentences being taken out of context. It is apparent to us that the commissioner and the court drew the source of funds principles in distributing the marital estate from two areas: the laws of other states and the version of the source of funds rule adopted in Virginia under the 1990 and 1991 amendments to Code § 20-107.3. The court was obliged to arrive at a fair and equitable distribution of the marital estate based upon the equities of the parties as revealed by the evidence. We do not find it inappropriate for the commissioner to consider, only by analogy, the 1990 and 1991 amendments to the statute. The source of funds rule was simply one factor used by the commissioner in arriving at the ultimate conclusion. The commissioner considered in detail all of the other evidence in the case.

However, even if the final decree approving the report be viewed as applying the 1991 amendment to this proceeding, which was filed in 1989, we find no error as the provision pertaining to the burden of proof of the owning spouse is procedural in nature and not substantive.

> The distinction between substantive provisions of law, which cannot be applied retroactively, and procedural or remedial statutes, which may be applied retroactively where a retroactive legislative intent is demonstrated, was explained in *Shiflet v. Eller,* 228 Va. 115, 120, 319 S.E.2d 750, 753 (1984). In *Shiflet,* the Supreme Court stated that substantive rights are addressed in statutes which create duties, rights, or obligations. In contrast, the Court explained that procedural or remedial statutes merely set forth the methods of obtaining redress or enforcement of rights.

*Cohen v. Fairfax Hosp. Ass'n,* 12 Va. App. 702, 705, 407 S.E.2d 329, 331 (1991).

Accordingly, we hold Code § 20-107.3, as amended in 1991, pertaining to the burden of proof of the owning spouse, which is procedural by nature and does not affect any substantive rights, could be applied retroactively in this case.

## II.

We turn now to the issue of allocating the appreciation in value of the Pannill Knitting stock owned by the husband. The commissioner concluded that twenty percent of such appreciation flowed directly from Mr. Decker's marital efforts and, therefore, was marital property. The husband, in urging us to reverse the trial court's approval of this finding, asserts that the record contains no factual basis in support thereof. The wife, on the other hand, argues that the trial court erred in holding too small a portion of the stock's appreciation to be a part of the marital estate. After a proper consideration of the applicable standard of review, we find no reversible error in the trial court's determination.

"[E]ach partner should receive a fair proportion of the property accumulated during marriage, including property titled in the other party's name but which has appreciated in value due to the non-monetary efforts of the non-owner spouse." *Roane v. Roane,* 12 Va. App. 989, 994, 407 S.E.2d 698, 701 (1991) (citation omitted). As was noted in *Brown v. Brown,* 5 Va. App. 238, 244-45, 361 S.E.2d 364, 368 (1987),

> [T]he chancellor is necessarily vested with broad discretion in the discharge of the duties the statute [Code § 20-107.3] imposes upon him. Unless it appears from the record that the chancellor has abused his discretion, that he has not considered or has misapplied one of the statutory mandates, or that the evidence fails to support the findings of fact underlying his resolution of the conflict in the equities, the chancellor's equitable distribution award will not be reversed on appeal.

Apart from the non-monetary efforts of Mrs. Decker, as found by the commissioner, the record clearly demonstrates Mr. Decker's substantial contribution to the growth of PKC and the increase in value of its stock. While he was one of five key executives, his testimony described his position as "first among equals." The corporation appar-

ently recognized his value by purchasing ten million dollars of insurance on his life, the same amount purchased on the life of the company president. No other corporate executive was insured for more than three million dollars. When allocating bonuses received as a result of the buyout, the corporation gave Mr. Decker a share equal to that received by the president. His value was further recognized by his dramatic rise on the corporate ladder. Ultimately, when the company needed a new president, Mr. Decker was selected for the job. He ran the day-to-day operation of the plant, was responsible for the finance division, and exercised a substantial amount of influence over the sales division.

However, the record also contains evidence that all of the stock appreciation could not be attributed to Mr. Decker. As noted earlier, the company's operations were determined by five key executives, of which Decker was one, albeit the most influential. Also, although according it diminished weight for other reasons, the commissioner noted that the rate of the company's growth and profitability decreased after Mr. Decker became president.

On this record, the trial court adopted the finding that only twenty percent of the appreciation of the stock should be part of the marital estate. Although we might have come to a different conclusion, the record contains evidence that supports the finding, and we cannot say that the trial court abused its discretion approving the recommendation of the commissioner on this issue.

### III.

The husband next contends that the trial court erred in not awarding him fifty percent credit for the value of two automobiles he purchased for the wife and which the trial court awarded to her. We disagree.

The record shows that the two vehicles were encumbered with a debt of approximately $80,000, an amount that exceeded their combined value of $63,135. The debt was evidenced by the wife's sole signature, and the court held that she alone was responsible for its payment. In *Trivett v. Trivett*, 7 Va. App. 148, 371 S.E.2d 560 (1988), we held that a valid indebtedness secured by marital property reduces the value of the property to the extent of the indebtedness. If the indebtedness equals or exceeds the value of the property, for purposes of a monetary award, the property has essentially no value. *Id.* at 151-52, 371 S.E.2d at 562.

We find no merit in husband's suggestion that the rule should be different because wife incurred the debts on the cars after separation. As pointed out in *Trivett,* if the debt on the property is *deliberately* created for the purpose of reducing or eliminating a monetary award, the court may disregard the encumbrance. *Id.* at 155-56, 371 S.E.2d at 564. However, expenditure of funds for items such as living expenses, support, and attorney's fees, constitutes a valid marital purpose and is not dissipation or a deliberate attempt to affect a monetary award. *See Amburn v. Amburn,* 13 Va. App. 661, 414 S.E.2d 847 (1992); *Clements v. Clements,* 10 Va. App. 580, 397 S.E.2d 257 (1990). The record contains evidence that the money received from the encumbrances on the vehicles was used for living expenses, litigation expenses and costs. Accordingly, we find no merit in the husband's assertion that the trial court erred in this regard.

## IV.

We find no merit in the other assignments of error presented by the wife. We will address her arguments in the order in which they were presented in her brief.

## A.

Wife asserts that the trial court erred in upholding the commissioner's refusal to permit certain testimony of her expert witnesses, Mr. DeJong and Dr. Poindexter, on the relationship between the appreciation of PKC stock and the husband's marital efforts. Husband contends that he did not have adequate notice of the specific testimony that would be offered and the court agreed. We find no abuse in discretion in the court's approval of the commissioner's ruling and affirm the same. *See City of Hopewell v. County of Prince George,* 240 Va. 306, 397 S.E.2d 793 (1990).

## B.

Wife next asserts that the trial court underestimated the size of the marital estate by failing to include certain assets that she contends were dissipated by husband. These assets were in the form of gifts to various members of his family. The record shows that during the marriage the husband gave gifts to both his and the wife's family. After the separation, the husband gave only to his family. The commissioner found that these post-separation gifts comported with the Deckers' overall estate planning made during the marriage. The mere fact that he discontinued the gifts to the wife's family does not mean that the

continued gifts to his own family constituted waste. In *Robinette v. Robinette*, 736 S.W.2d 351 (Ky. Ct. App. 1987), the Kentucky Court of Appeals dealt with a similar problem and held that a wife did not dissipate marital funds by giving financial assistance to her sister while the parties were separated. The Court recognized that gifts to family members could be considered dissipation, but testimony that the parties had regularly provided financial assistance to nonresident family members provided sufficient evidence to rebut this possibility. *Id.* at 354.

Similarly, in this case, the pattern of pre-separation giving as a part of estate planning was evidence that supported the trial court's judgment. Had the husband continued to give to both sides of the family, the marital estate would have lost an additional $94,000, that being the usual amount given to the wife's family. Phrased differently, the marital estate is greater by $94,000 because the husband gave only to his family after the separation. The wife will ultimately share in this sum. The $94,000 amount was considered by the commissioner as part of the "other factors" that he was required to consider under Code § 20-107.3.

## C.

Wife next contends that the trial court erred in not considering her husband's dissipation of her unified tax credit as one relevant factor in dividing the marital property. This issue arises from certain gift tax returns that wife alleges husband presented to her for signature without her reading them. She alleges that out of fear of verbal abuse she failed to read the returns and signed them as presented to her. The gifts on the returns were made only to members of husband's family and not to her family. As a result of the filing of those returns, wife claims she has lost $52,415 of her once-in-a-lifetime unified tax credit provided by the Internal Revenue Code § 2010.

However, the record shows that the gifts requiring the unified tax credit were given during the marriage, and the tax returns were executed during the marriage. The fact that the impact of losing this credit *may* be felt sometime in the future does not create a post-separation dissipation issue. The commissioner's report found the claim of loss of the uniform tax credit to be speculative. He also found that she had consented to the loss, if any.

Considering the standard of review which we are required to exercise in our consideration of issues raised on appeal, we find no error in the trial court's ruling.

## D.

Wife next argues that the commissioner, and hence the trial court, failed to classify as marital property an income tax refund received by husband. However, our review of the record satisfies us that the commissioner's analysis of this issue proceeded under former Code § 20-107.3(E)(10), which required the trial court to consider the tax consequences to each party. The commissioner's finding was not one of classification but of distribution of the asset based upon the equities revealed by the evidence.

The record shows that husband paid estimated tax payments for the year 1989, the year the parties separated. These payments exceeded the tax liability for that year and resulted in a refund of $97,500. Wife claimed one-half of the payments and received a refund in the full amount. Husband also received a similar refund which he applied to the next year's taxes. The evidence further revealed that the Internal Revenue Service has since instituted collection procedures against wife to recover the full $97,500. At the time of the hearing, this issue had not been resolved.

The record shows that the commissioner's conclusions were based largely on the testimony of wife's expert witness, Mr. David DeJong, a certified public accountant and a lawyer. He conceded that the issue "was not one hundred percent clear under the tax law." He acknowledged that inconsistent memoranda within the Internal Revenue Service existed as to the resolution of the question. Based on the uncertainty of the law, the commissioner concluded that wife's evidence failed to carry the burden of proof imposed upon her by *Bowers v. Bowers*, 4 Va. App. 610, 617, 359 S.E.2d 546, 550 (1987), to establish that she was entitled to a credit for any portion of the refund. That this holding was reflective of the equities involved is clearly shown by the commissioner's statement in his report:

It offends the sense of fairness that the plaintiff, with no taxable obligation or income, should somehow receive a tax refund check of $97,500.00 merely because of the technical form in which the tax estimated vouchers were filed, which filings were required because of the income reported by and attributable the Defendant.

We find no abuse of discretion in the trial court's approval of the commissioner's recommendation.

### E.

Finally, wife invites us to overrule *Aster v. Gross,* 7 Va. App. 1, 371 S.E.2d 833 (1988), which held that marital fault must result in economic consequences in order to become a relevant factor in equitable distribution. We recently revisited this issue in *Marion v. Marion,* 11 Va. App. 659, 401 S.E.2d 432 (1991), and affirmed *Aster.* We find nothing in the present record that prompts us to overrule these prior holdings and, accordingly, decline to do so.

For the foregoing reasons, the final decree entered by the trial court is

*Affirmed.*

Moon, C.J., and Cole, J., concurred.