COURT OF APPEALS OF VIRGINIA

Present:  Judges Benton, Elder and Overton
Argued at Richmond, Virginia


JOHN BARRY DONOHUE, JR.
                                     MEMORANDUM OPINION[*] BY
v.  Record No. 2675-96-2        JUDGE JAMES W. BENTON, JR.
                                        JULY 8, 1997
MARY PATRICIA SHEARON DONOHUE


           FROM THE CIRCUIT COURT OF HENRICO COUNTY
                    James E. Kulp, Judge

          Edward D. Barnes (Barnes & Batzli, P.C., on
          briefs), for appellant.

          J. W. Harman, Jr. (Harman & Harman, on
          brief), for appellee.



     On appeal, John Barry Donohue contests several aspects of a

trial judge's equitable distribution award to his wife Mary

Patricia Shearon Donohue.  The husband presents the following

eight issues:

          1.  Whether the trial [judge] erred in
          failing to designate the loans taken from
          [the husband's] 401(k) plan and from his
          mother as items to be reimbursed or credited
          to the [husband] in that such loans were
          taken for the purposes of maintaining the
          marital estate and pay[ing] some other family
          and marital obligations.

          2.  Whether the trial [judge] erred in
          ordering an equal division of the stock
          options in that the evidence does not support
          such division.

          3.  Whether the trial [judge] erred in
          failing to take into account, when valuing
          the marital assets, the tax consequences
          attributable to the Fidelity Cash Reserves

_____
        [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

IRA, the Reynolds Metals 401(k) Plan, the
Reynolds Metals Tax Reservation Act Stock
Ownership Plan (TRASOP), and the Reynolds
Metals Incentive Deferral Plan.

4. Whether the trial [judge] erred in
finding that the repayment of the loan from
the [husband's] father's estate and the tax
refunds credits were items to be reimbursed
or credited to [the husband] in that they
were applied to maintain the marital estate
and pay some other family and marital
obligations.

5. Whether the trial [judge] erred in
ordering an equal division of [the husband's]
retirement benefits in that the evidence does
not support such division.

6. Whether the trial [judge] erred in
ordering an equal division of the marital
assets and marital debts in that the evidence
does not support such division.

7. Whether the trial [judge] erred in
failing to address the transfer of various
items of personal property and to divide the
family photographs.

8. Whether the trial [judge] erred in its
monetary award in that the amount awarded is
not supported by the [judge's] other rulings.

For the reasons that follow, the decree is affirmed in part and
reversed in part.

## I.

The husband and wife were married on September 14, 1974.
The wife was employed two years and ceased full time employment
shortly before their first child was born. The husband has been
employed since the beginning of the marriage. Two years after
the marriage, the husband began working for Reynolds Metals
Company, where he continues to be employed. During his

employment, the husband received stock options and other employment related assets.

The parties separated on March 1, 1993. Shortly after their separation, husband borrowed $50,000 from his 401(k) account at Reynolds Metals to pay expenses. After that fund was depleted, the husband borrowed $33,000 from his mother. In addition, the husband received a tax refund for 1993 and a repayment of a loan the husband had previously made to his father's estate. Husband appeals from the final decree entered in 1996 ordering a division of these debts and assets.

## II.

### HUSBAND'S LOANS

The trial judge refused to allocate the husband's loans between both parties because he found the husband's "use of these funds to be a dissipation of marital assets." We disagree that the evidence proved a dissipation.

The evidence proved that shortly before their separation, the parties expended large amounts of cash for the wife's automobile and home improvements. At the time of their separation, the parties' cash accounts were minimal. The husband's salary was the primary source of funds. The wife was not employed.

After the parties separated in 1993, the husband was ordered by a juvenile court judge to pay $2,442 per month in child support and $2,800 per month in spousal support. The letter

opinion ordering those payments found that the husband's net monthly income was $5,323. The evidence at that time proved that the husband had borrowed $50,000 from his 401(k) account at Reynolds Metals and had put the money into a separate fund "to pay the mortgage and the support." In ordering support payments, the letter opinion also ruled that "[the husband] shall be permitted to deduct the amount of spousal support from the fund [established by the borrowing and] allocated in anticipation of the need to pay the mortgage." The opinion further noted that "based upon the monies available and expenses of the parties, the marital residence should be listed for sale immediately."

Husband testified that "[t]he [borrowed] funds have been used primarily to give [wife] money, . . . to pay the mortgage[,] . . . to pay children's sports expenses[, and] . . . for some of the family medical expenses." Husband also testified that the money was used to pay for automobile insurance on his and the wife's vehicles. On August 27, 1994, after the $50,000 loan was depleted, husband borrowed $33,000 from his mother. Husband used these funds to continue to pay spousal support and other expenses. Although the trial judge found that the juvenile court judge's letter opinion ordered that the husband was to pay the spousal support from the borrowed funds, the trial judge refused to consider these debts to be marital debts and stated that husband "could not use the marital funds . . . to pay for his court ordered obligations; to find otherwise, would be to allow

[husband] to pay his court ordered obligations partly from funds belonging to [wife]."

As a general rule, "[t]he use of [marital] funds for living expenses while the parties are separated does not constitute dissipation." Clements v. Clements, 10 Va. App. 580, 587, 397 S.E.2d 257, 261 (1990). Addressing the concept of waste by dissipation, this Court has ruled that "[d]issipation occurs 'where one spouse uses marital property for his own benefit and for a purpose unrelated to the marriage at a time when the marriage is undergoing an irreconcilable breakdown.'" Id. at 586, 397 S.E.2d at 261 (citation omitted). When dissipation occurs, the spouse who used funds in that manner must assume full responsibility for the debt the spouse created. See id. "[T]he burden is on the party who last had the funds to establish by a preponderance of the evidence that the funds were used for living expenses or some other proper purpose." Id. at 587, 397 S.E.2d at 261.

No evidence proved that the funds were used for a purpose unrelated to the marriage. The evidence proved that when the parties separated in 1993 the parties had minimal cash assets to pay their ongoing expenses. The husband was obliged by court order to pay spousal and child support in an amount that was $81 less than the husband's net monthly income. In ordering that amount, the judge's opinion letter stated that the fund containing the borrowed money was an appropriate source for the

spousal support payment. Indeed, the evidence clearly proved that the parties had no funds to pay the mortgage and that the use of the borrowed funds, which was approved by the letter opinion, enabled the parties to maintain the marital residence, the major asset that they owned. Thus, we hold that the trial judge erred in finding dissipation and refusing to consider the loan obligation a marital debt. The husband's initial use of the funds to pay the mortgage and then spousal support was not an act of dissipation. See Decker v. Decker, 17 Va. App. 12, 19, 435 S.E.2d 407, 412 (1993) ("[E]xpenditure of funds for items such as living expenses, support, and attorney's fees, constitutes a valid marital purpose and is not dissipation or a deliberate attempt to affect a monetary award.").

"[A] valid indebtedness secured by marital property reduces the value of the property to the extent of the indebtedness." Id. at 18, 435 S.E.2d at 412. The husband met his burden of showing that he used the funds properly by proving that the juvenile court judge approved the expenditure and testifying that he used the money for family expenses. The wife offered no evidence to contradict his testimony. Thus, the trial judge erred in failing to reduce the value of the marital estate by the amount of the indebtedness. We remand this issue to the trial judge.

III.

STOCK OPTIONS

The evidence proved that from 1987 through 1992, husband received stock options from his employer. The options could not be exercised until at least one year after they were granted, and the options had to be exercised within ten years of the date they were granted. At the time of the equitable distribution hearing, the husband had not exercised any of the options.

The husband argues that awarding the wife 50% of the proceeds earned from exercising the options violated the mandate of Code § 20-107.3(G)(1). Code § 20-107.3(G)(1), which authorizes the trial judge to order division of profit-sharing plans, pensions, and deferred compensation plans, states that the non-employee spouse shall not receive a share that "exceed[s] fifty percent of the marital share of the . . . benefits." The husband argues that the marital share of the options was only a fraction of their total value and that by awarding the wife 50% of their total value the trial judge violated the mandate of Code § 20-107.3(G)(1).

We disagree with the husband's assertion that the marital share of the stock options was only a fraction of their total value. The husband relies on Dietz v. Dietz, 17 Va. App. 203, 213, 436 S.E.2d 463, 470 (1993), where the trial judge determined that only a fraction of the value of the stock options was marital property. However, in Dietz, the employee's right to exercise the option was conditioned upon his continued employment for a specified duration. See id. at 213, 436 S.E.2d at 469. At

the time of the parties' separation, the right to exercise the options had not yet vested. See id. at 213, 436 S.E.2d at 470. Under those facts, the trial judge properly ruled that a portion of the options was earned after the parties' separation, and therefore, that portion of the options was not marital property. See id.

In this case, however, the options were fully vested at the time of the parties' separation and were not conditioned on the husband's continued employment at Reynolds Metals. Although the husband was required to wait for one year before exercising the options, the right to exercise the options at that time was fully vested. Accordingly, husband's reliance on Dietz is misplaced.

Code § 20-107.3(G)(1) defines the marital share of any profit-sharing plan as "that portion of the total interest, the right to which was earned during the marriage and before the last separation of the parties." The unconditional right to exercise the options at a future time certain was earned and vested during the marriage. The full value of the options was, therefore, marital property.

Accordingly, we hold that the trial judge correctly ruled that the entire value of the stock options was marital property. The trial judge did not violate the mandate of Code § 20-107.3(G)(1) by granting the wife 50% of the proceeds earned upon exercise of the stock options. Furthermore, the record does not support the husband's argument that the trial judge abused

his discretion in awarding the wife 50% of this asset.

                              IV.

                      TAX CONSEQUENCES

The husband obtained the following assets during his employment at Reynolds Metals: (1) Fidelity Cash Reserves IRA, (2) 401(k) Plan, (3) Tax Reservation Act Stock Ownership Plan, and (4) Management Incentive Deferral Plan. The trial judge awarded 50% of these assets to the wife. The husband argues that the trial judge erred in refusing to consider the tax consequences of the division. We disagree.

Ruling on a similar issue, this Court recently stated that "potential [tax] liability is a proper consideration in the determination of a property division and an award, _if it is not speculative_." _Arbuckle v. Arbuckle_, 22 Va. App. 362, 367, 470 S.E.2d 146, 148 (1996) (emphasis added). The trial judge in this case found that the amount of taxes was speculative because the evidence did not prove what tax rate would apply to the parties at the time the money is withdrawn. The husband's contention that his current tax bracket should be used in determining the tax consequences that will result from his future receipt of his retirement benefits is simply without merit. We hold that the trial judge did not err in refusing to factor in possible tax effects on the ground that a determination of the tax rates applicable to the parties in the future would be speculative.

                               V.

TAX REFUND AND LOAN REPAYMENT

After the parties separated, the husband received a federal and state tax refund for 1993.  The estate of the husband's father also repaid husband for a loan husband had extended to the estate.  The trial judge classified as marital property one fourth of the tax refund and all of the loan repayment.

The husband argues that the monies were not marital property because they were received after the parties' separation.  We disagree.  The parties' right to receive both payments had fully vested before they separated.  Before the separation, the parties had a claim for repayment of any taxes they overpaid.  Likewise, they had a claim for repayment of the loan they had extended to the husband's father's estate.  That the parties were not actually paid until after the separation is of no moment.

The husband also argues that because those funds had been expended for marital purposes before the equitable distribution hearing, the trial judge should not have considered these monies as existing assets.  The husband states that he had used the money to pay for family expenses.  We remand this issue to the trial judge to determine whether those funds were so used.  See supra section II.

VI.

RETIREMENT BENEFITS, MARITAL ASSETS, AND DEBTS

The husband argues that the record does not support the trial judge's finding that the wife should receive half of the

marital assets.  We disagree.

The trial judge made the following findings:

> At the time of the marriage, [the wife] was employed at the National Institute of Health.
>
> She resigned this position to move to Ohio to be with [the husband].  She found employment in Ohio in December 1974, and worked until July 1976, when she again moved with [the husband] to Connecticut.  [The husband] at that time wanted [the wife] to stay at home to raise the children, to take care of the home, so she's not worked since.
>
> [The husband] was with a law firm initially and has been employed by Reynolds Metals Company . . . since 1976.  Initially, [the wife] worked and contributed monetarily to the well being of the family, the acquisition, care and maintenance of the marital property.
>
> Since the move to Connecticut in 1976, her contributions have been nonmonetary. [The husband] has contributed mainly monetarily to the marriage, but has contributed nonmonetarily by assisting the children with various things such as homework.  He's been involved with their sporting activities, and has helped the child who has had some health problems.

Based upon the evidence, the trial judge found that "each party contributed equally to the marriage, and to the acquisition, care and maintenance of the marital property."

"'The trial court's findings must be accorded great deference.  Its judgment will not be disturbed on appeal unless plainly wrong or without evidence to support it.'"  Amburn v. Amburn, 13 Va. App. 661, 663, 414 S.E.2d 847, 849 (1992) (citation omitted).  The record supports the trial judge's

rulings. Accordingly, we cannot say that the trial judge abused his discretion in awarding half of the marital property to the wife.

VII.

PERSONAL PROPERTY

The husband filed a motion in the equitable distribution proceeding seeking, among other things, permission to retrieve his personal belongings from the marital residence. In the final equitable distribution decree, the trial judge awarded all "personal property located at [the] marital residence" to the wife. However, the trial judge also ordered that the wife "immediately turn over to [the husband] the items of non-marital [personal] property of [the husband] identified in a previous exhibit." The husband's exhibit 7 listed several items of non-marital personal property. Thus, the record clearly reveals that the trial judge did address this issue in the final decree and made a specific ruling.

The husband also requested that the trial judge divide equally all family photographs and memorabilia. However, the final decree contained no provision directing the division of the photographs or otherwise addressing the husband's request. The husband properly noted his objection to the trial judge's failure to address the family photographs in the final order. Accordingly, we remand this issue to the trial judge for a ruling on the proper division of the family photographs and memorabilia.

## VIII.

## AMOUNT OF FINAL AWARD

The husband argues that although the trial judge stated clearly his intent to divide the marital assets and debts evenly between the parties, the final award did not achieve an equal division.  Therefore, the husband argues, the trial judge's order is erroneous.  We agree.

The trial judge made the following statements:

> I'm dividing [the marital assets] equally
> . . . that gives a total to [the wife] in the
> amount of $35,157.  And to [the husband],
> $47,315.
>
> The Court orders [the wife] to pay all
> of the marital debts which are listed on her
> submission in the amount of $13,022.
>
>     *     *     *     *     *     *     *
>
> The Court further orders that [the husband]
> is to pay [another marital debt] . . . in the
> amount of $6,733. . . .
>
> Now, taking into account the marital
> debt, which the Court indicated should be
> divided equally among the parties, that
> brings the total for [the wife] at $38,524.
> And [the husband], $53,826.
>
> The Court after consideration of all the
> equities in the case and the factors set
> forth in section 20-107.3(E), makes a
> monetary award to [the wife] in the amount of
> $15,300.

Although the trial judge explicitly stated his intention to divide the marital debts and assets equally between the parties, an analysis of the above discussion reveals that the trial judge failed to reach that result.[1]

_____

[1] To account for the debt, the judge ordered the wife to pay $13,022 and the husband to pay $6,733.  Thus, the total debts were $19,755, and each party should have been responsible for $9,877.50.  However, the trial judge, in addition to requiring the wife to pay $13,022, apparently credited the wife as having received an additional $3,367 in assets (the amount of her half of the debt that the husband was required to pay) for a total of $38,524 in assets.  The net "debt" the judge therefore held the wife responsible for was $16,389.  Similarly, in addition to requiring the husband to pay $6,733, the trial judge apparently credited the husband as having received an additional $6,511 in assets (the amount of his half of the debt that the wife was required to pay) for a total of $53,826 in assets.  The net

Obviously, if the wife had in her possession $35,157 in assets and the husband had in his possession $47,315 in assets, the total amount of assets to be divided was $82,472. The wife was ordered to pay $13,022 of the debts and the husband was to pay $6,733 of the debts, for a total of $19,755. Thus, the net marital assets after payment of debts was $62,717. Equally divided, each should have received $31,358.50 of the net assets.

The parties had in their possession, after payment of debts allocated to them, the following assets:

| Husband | Wife |
|---------|------|
| $47,315 | $35,157 |
| − 6,733 | −13,022 |
| $40,582 | $22,135 |

To effect an equal division, the husband was only required to pay the wife the difference between $40,582 and $31,358.50 -- a total of $9,223.50. A review of the trial judge's calculations demonstrates that the trial judge committed errors in his determination of the final award.

---

"debt" the judge allocated to the husband was $13,244. Moreover, based on the trial judge's conclusion that the wife had received $38,524 in assets and the husband had received $53,826 in assets, the trial judge ordered the husband to pay to the wife $15,300. Presumably, the purpose of the award was to cause the wife's full award to be $53,824, just a few dollars less than the total amount the judge concluded the husband had received. The fallacy in that conclusion, however, is that after ordering the husband to pay $15,300, the judge should have reduced the husband's total award by that amount. Thus, the husband actually received only $38,526.

For the reasons stated in this opinion, the award must be recalculated.  Accordingly, we reverse the decree distributing the marital property and remand the case for reconsideration.

<u>Affirmed in part, reversed in part, and remanded</u>.