COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Coleman and Lemons*
Argued at Richmond, Virginia


STACEY W. BECK
                                        MEMORANDUM OPINION** BY
v.    Record No. 1082-99-2              JUDGE SAM W. COLEMAN III
                                            SEPTEMBER 19, 2000
JOSEPH E. BECK, III


                FROM THE CIRCUIT COURT OF HANOVER COUNTY
                        Richard H. C. Taylor, Judge

                Barbara S. Picard (Cawthorn, Picard & Rowe,
                P.C., on brief), for appellant.

                (Joseph E. Beck, III, pro se, on brief).
                Appellee submitting on brief.


     Stacey W. Beck (wife) appeals the trial court's equitable

distribution and spousal support awards.  On appeal, wife argues

that the trial court erred in:  (1) finding that she made a gift

to husband of her separate funds that were used to purchase and

refinance the marital home and that were placed in investment

accounts; (2) making an unequal division of the parties'

retirement plans; (3) refusing to award her spousal support;

(4) failing to impute $90,000 annual salary to husband for

     * Justice Lemons participated in the hearing and decision of
this case prior to his investiture as a Justice of the Supreme
Court of Virginia.

     ** Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

purposes of calculating child support; (5) failing to find that husband committed waste in regard to a $26,000 bonus husband received during the marriage and the $8,000 he received from the sale of the parties' vehicle, a marital asset; and (6) failing to award her attorney's fees. For the reasons that follow, we affirm in part, reverse in part, and remand.

## I. BACKGROUND

The Becks were married in October 1988 and separated in December 1996. They were divorced by final decree in September 1998. In April 1999, the circuit court entered its equitable distribution and spousal support decree. When the parties separated, they had two young sons, ages three and two, and wife was pregnant with their third child. Shortly after they separated, wife moved to Pennsylvania to be near her family. At that time, husband told wife that while she was not living in the marital home he would live there. However, after several months, husband left the home and moved into an apartment with his paramour.

In September 1992, husband began working for Hungerford Mechanical as a sales manager for the fire protection division. In May 1997, husband voluntarily left his employment with Hungerford Mechnical, where he was earning a base salary of $50,000 per year plus ten percent commission on the profit of the fire protection department. The company paid the commission

bonuses in the first quarter of each year for the preceding year.  For the two years that husband received a bonus, the amounts varied substantially:  in 1995, he received a bonus between $7,000 and $8,000 and, in 1996, he received $26,000.

After husband left Hungerford Mechanical, he started his own company, Beck Fire Protection.  The company was in business for less than one year and had been dissolved at the time of the equitable distribution hearing.  At the time of the hearing, husband had been employed as a general manager and salesman for Commonwealth Sprinkler, where he earned an annual salary of $35,000.

During the marriage, in addition to the marital residence, the parties acquired various assets, including investment accounts, retirement accounts, and bank accounts.  Many of the accounts had been primarily funded by gifts to wife from her family.

## II.  ANALYSIS

> A decision regarding equitable distribution rests within the sound discretion of the trial court and will not be disturbed unless it is plainly wrong or without evidence to support it.  See McDavid v. McDavid, 19 Va. App. 406, 407-08, 451 S.E.2d 713, 715 (1994) (citing Srinivasan v. Srinivasan, 10 Va. App. 728, 732, 396 S.E.2d 675, 678 (1990)).  "Unless it appears from the record that the trial judge has not considered or has misapplied one of the statutory mandates, this Court will not reverse on appeal."  Ellington v. Ellington,

- 3 -

8 Va. App. 48, 56, 378 S.E.2d 626, 630 (1989).

Holden v. Holden, 31 Va. App. 24, 26-27, 520 S.E.2d 842, 844 (1999). "In challenging the court's decision on appeal, the party seeking reversal bears the burden to demonstrate error on the part of the trial court." Barker v. Barker, 27 Va. App. 519, 535, 500 S.E.2d 240, 248 (1998) (citation omitted). "In fashioning any equitable distribution award, the trial court must consider all the enumerated factors of Code § 20-107.3(E) in exercising its discretion, and 'the Supreme Court and this Court have repeatedly held that it is reversible error for the trial [court] to fail' to do so." Gottlieb v. Gottlieb, 19 Va. App. 77, 94, 448 S.E.2d 666, 676 (1994) (quoting Robinson v. Robinson, 5 Va. App. 222, 227, 361 S.E.2d 356, 358-59 (1987)). "'A commissioner's findings of fact which have been accepted by the trial court "are presumed to be correct when reviewed on appeal and are to be given 'great weight' by this Court."'" Gilman v. Gilman, 32 Va. App. 104, 115, 526 S.E.2d 763, 768-69 (2000) (citation omitted).

### A. Wife's Separate Property Claims

Wife contends that the trial court erred by finding that she made a gift to husband of her separate funds that were used to purchase or curtail the mortgage on the marital residence and to fund the Interstate Johnson Lane account, the Scudder Capital

Growth Fund, the Vanguard Group Investment account, the Fidelity Magellan account, and the Fidelity Cash Reserve account.

### 1. Marital Residence

During the marriage, the parties purchased the marital residence for approximately $306,071 and titled it jointly as tenants by the entirety. They made a down payment of approximately $60,000 on the purchase price which consisted of $11,571 of marital proceeds from the sale of their first home; $28,000 from the wife's Fidelity Case Reserve account, which we find for reasons hereafter set forth was wife's separate property; and $20,000 of husband's separate property, which he had received during the marriage as a gift from wife's father. They financed the balance. A year later, they refinanced the loan by paying $50,404 to curtail the loan balance, which the wife paid from the Calvert Account and which husband acknowledges was wife's separate property.

The trial court classified the marital residence and proceeds from the sale as all marital property. The commissioner stated that the "parties clearly intended for this home to serve as their family and marital residence and the property was titled jointly, by tenants by the entirety and the separate contributions made by [wife] towards the acquisition and of the equity in the home, is deemed to be a gift by her to him and the sale proceeds are marital." Accordingly, the trial

- 5 -

court ruled that even though the wife traced her contributions to the acquisition of the property to her separate funds, nevertheless, the property and proceeds are all marital, rather than hybrid, because wife made a gift to husband of an interest in the funds by placing them in the martial residence. Therefore, the trial court, based on the parties' respective contributions to the purchase of the property and the source of those funds, equitably distributed the marital assets two-thirds to wife and one-third to husband.

Code § 20-107.3(A)(3)(e) provides that:

> [w]hen marital property and separate property are commingled into newly acquired property resulting in the loss of identity of the contributing properties, the commingled property shall be deemed transmuted to marital property. However, to the extent the contributed property is retraceable by a preponderance of the evidence and was not a gift, the contributed property shall retain its original classification.

We have stated:

> In order to trace the separate portion of hybrid property, a party must prove that the claimed separate portion is identifiably derived from a separate asset. This process involves two steps: a party must (1) establish the identity of a portion of hybrid property and (2) directly trace that portion to a separate asset.

Rahbaran v. Rahbaran, 26 Va. App. 195, 208, 494 S.E.2d 135, 141 (1997) (citing Code § 20-107.3(A)(3)(d)-(f)). "'[T]he party claiming a separate interest in transmuted property bears the

- 6 -

burden of proving retraceability.'" Holden, 31 Va. App. at 27, 520 S.E.2d at 844 (quoting von Raab v. von Raab, 26 Va. App. 239, 248, 494 S.E.2d 156, 160 (1997)).

The evidence proves and amply supports the trial court's finding that wife traced $78,404 of her separate funds to the purchase of the marital home. The commissioner concluded, however, that wife had made a gift to husband of these separate funds which she used to purchase and refinance the home. Wife testified that she paid $28,000 from her separate funds as a down payment on the home, which funds had been gifts to her from her father and grandfather. Wife introduced copies of checks payable to her from her father as evidence of the gifts. Wife also testified that just before refinancing the residence, she transferred $51,000 from her separately owned bank account, the Calvert account, into the parties' joint NationsBank account. Thereafter, a check was drawn on the NationsBank account in the amount of $50,404 to curtail the mortgage. The foregoing evidence supports the trial court's finding that wife traced $78,404 in separate property that she contributed to the hybrid property. See Holden, 31 Va. App. at 28-29, 520 S.E.2d at 844-45.

The trial court upheld the commissioner's finding that, although wife retraced her separate funds in the marital residence, the evidence proved that she gifted those funds to

husband. We disagree. No presumption of gift arises solely from the fact that the property, which was acquired in part with wife's separate funds, was jointly titled to husband and wife. See Code § 20-107.3(A)(3)(g). To establish a gift, the donee must prove by clear and convincing evidence: "(1) the intention on the part of the donor to make the gift; (2) delivery or transfer of the gift; and (3) acceptance of the gift by the donee." Theismann v. Theismann, 22 Va. App. 557, 566, 471 S.E.2d 809, 813 (citation omitted), aff'd en banc, 23 Va. App. 697, 479 S.E.2d 534 (1996); see also Dean v. Dean, 8 Va. App. 143, 146, 379 S.E.2d 742, 744 (1989) (holding that one who claims ownership of property by gift bears the burden of proving the donative intent of the donor by clear and convincing evidence).

Here, the element required to prove a gift that is disputed by the parties is wife's intent to give the money to husband. Although the parties intended the residence to be their family and marital home, husband did not prove by clear and convincing evidence that wife by words, acts, or conduct intended to gift the funds to him that were used as a down payment or to reduce the mortgage. Wife testified that she never mentioned or discussed making a gift of those funds to husband and that husband knew the funds were her separate property, which she had received as gifts from her family. Husband testified, "The

- 8 -

intention with those funds as told to me by herself and her dad was that they were given to her as an inheritance and for us, part of it was inheriting and a gift and the intention was for us to do as we pleased."  Husband, however, admitted that he "rarely" discussed with his father-in-law the gifts the father-in-law gave to wife.  Husband also testified that the funds in the Calvert account, of which $50,404 was used to refinance the mortgage on the residence, was exclusively in wife's name "for her to do as she pleased."  Husband stated that after he left the marital residence, he assured wife's father that if the funds were hers, "[he had] no desire to try and go after it."  Accordingly, we find no evidence to support the trial court's finding that husband proved, by clear and convincing evidence, that wife intended to gift the funds to husband that she used as a down payment or to curtail the mortgage.  We, therefore, reverse the trial court's holding and remand the issue to the trial court for entry of an equitable distribution award of the $160,357.67 in accordance with the following directions.

The $160,357.67 proceeds shall be distributed in accordance with the proportional contributions that the parties made to the acquisition of the property.  Neither party contends and no evidence suggests that the property increased in value due to subsequent contributions of marital property or the personal

efforts of either party. Furthermore, the evidence does not establish the extent to which the parties acquired marital equity in the home by having made mortgage payments with marital funds. Accordingly, on the record before us, we find that wife contributed 71.3% from her separate funds to acquire the property, husband contributed 18.2% from his separate funds, and the parties contributed marital funds of 10.5%. The trial court has discretion to divide the marital share according to the Code § 20-107.3(E) factors. Accordingly, the trial court shall award wife 71.3% or $114,335.01 as her separate property, shall award husband 18.2% or $29,185.09 as his separate property, and shall distribute the 10.5% or $16,837.55 between the parties in accordance with the Code § 20-107.3(E) factors.

## 2. Investment Accounts

Wife next contends that the trial court erred in finding that she gifted to husband her separate funds that were deposited in the Interstate Johnson Lane account, the Scudder Capital Growth Fund, the Vanguard Group Investment account, the Fidelity Magellan account, and the Fidelity Cash Reserve account. Wife introduced evidence showing that during their marriage she received gifts totaling $273,430 from various family members. She introduced evidence showing that a portion of those funds was deposited into all of the above accounts. The commissioner found, which finding the trial court confirmed,

that wife had traced her separate funds in each account. However, the trial court found that the funds wife deposited into the investment accounts were marital property and that wife had gifted an undivided interest to husband in the separate property.

In the absence of satisfactory evidence to the contrary, property acquired by either spouse during the marriage is presumed to be marital. See Code § 20-107.3(A)(2); Hart v. Hart, 27 Va. App. 46, 61, 497 S.E.2d 496, 503 (1998). However, "[s]eparate property is . . . (ii) all property acquired during the marriage by bequest, devise, descent, survivorship or gift from a source other than the other party." Code § 20-107.3(A)(1).

> "In the case of a gift to one of the spouses, if there is credible evidence presented to show that the property was intended by the donor to be the separate property of one of the spouses, the presumption [of marital property] is overcome, and the burden shifts to the party seeking to have the property classified as marital to show a contrary intent on the part of the donor."

Rahbaran, 26 Va. App. at 210, 494 S.E.2d at 142 (quoting Stainback v. Stainback, 11 Va. App. 13, 17-18, 396 S.E.2d 686, 689 (1990)).

Here, the undisputed evidence proves that wife deposited the separate funds which were gifted to her by her family members into several of the accounts acquired during the

marriage. Wife concedes that part of the funds was deposited first into the parties' joint checking account and commingled there with marital funds before being deposited into the other accounts. Also, all of the investment accounts into which the funds were subsequently deposited also contained marital funds, except for the Fidelity Magellan account. The Fidelity Magellan and the Fidelity Cash Reserves accounts were registered solely in wife's name, and only she had access to those accounts. Husband testified that he actively managed the parties' investment accounts by reading trade journals, researching various investment accounts before an investment was made, keeping track of the investments, and organizing data onto spreadsheets. Wife testified that they made their investment decisions together. Husband testified that the gift money she received from family members was "supposed to be for both of [them]."

On these facts, the trial court did not err in finding that wife gifted to husband an interest in the separate funds deposited in the Interstate Johnson Lane account, the Scudder Capital Growth Fund, and the Vanguard Group Investment account. After depositing the funds into the marital checking account and commingling the separate funds with marital funds, the parties jointly made investment decisions, and the commingled funds were deposited into the investment accounts that were either jointly

registered or registered solely in husband's name. When wife received gifted funds from her family members, the funds would routinely be placed into the parties' joint marital checking account. The funds were disbursed and deposited into wife's separately held accounts as well as the parties' joint accounts or accounts registered solely in husband's name. Wife's decision to invest funds into the joint accounts or the accounts bearing only husband's name, rather than investing the funds in her separately held accounts, supports wife's intent to gift an undivided portion of those funds to husband. Viewing the evidence in the light most favorable to husband, we hold that the trial court was not plainly wrong in concluding that wife intended to make a gift to husband of a portion of these funds and that those funds thereby became marital property.

However, we hold that the trial court erred in finding that wife gifted to husband an interest in the funds in the Fidelity Magellan account. Husband failed to prove that wife by any acts, words, or conduct intended to gift an interest in the funds in this account to him. The account was registered solely in wife's name, only she had access to the account, and all the funds in the Magellan account were traced to wife's separate property. Additionally, the Fidelity Cash Reserve account was opened in wife's name only by her father depositing $20,000 into the account at the beginning of the parties' marriage. At the

- 13 -

equitable distribution hearing, husband testified that this account was in "wife's name only and [he didn't] have any access to that account." Accordingly, we hold that husband failed to show, by clear and convincing evidence, that wife intended to gift the funds in the Fidelity Magellan and Fidelity Cash Reserve accounts to him. Although wife's separate funds that were deposited into the Fidelity Cash Reserve account were commingled with some marital funds in that account, husband, in effect, concedes that the balance of the funds in that account was wife's separate property. See Code § 20-107.3(A)(3)(d) (commingling by contributing one category of property to another, resulting in loss of identity, transmutes except to extent retraced). Therefore, the trial court erred in finding that the funds were marital property. We, therefore, reverse that portion of the trial court's order and remand to the trial court for recalculation of the equitable distribution award of those remaining marital investment funds.

### B. Retirement Accounts

Wife contends that the trial court erred in failing to equally divide the parties' 401K plans. Wife asserts that the commissioner classified the retirement accounts as marital but then erroneously treated them as separate property and failed to apply the factors set forth in Code § 20-107.3(A)(2) and (E).

Code § 20-107.3(A)(2)(iii) provides that marital property is:

> All property including that portion of pensions, profit-sharing or deferred compensation or retirement plans of whatever nature, acquired by either spouse during the marriage, and before the last separation of the parties, if at such time or thereafter at least one of the parties intends that the separation be permanent, is presumed to be marital property in the absence of satisfactory evidence that it is separate property.

The parties stipulated that wife's 401K was valued at $36,000 and husband's 401K was valued at $61,830.70. The trial court classified both husband's and wife's 401K plans as marital but concluded that each party shall retain his or her account without contribution from the other. The commissioner noted, "As a result of their sole efforts towards the values of these plans from their previous employers, separately, this Commissioner will report that each party maintain those accounts separately, without contribution to the spouse."

Code § 20-107.3(G)(1) provides that upon consideration of the factors set forth in Code § 20-107.3(E), "[t]he court may direct payment of a percentage of the marital share of any pension, profit-sharing or deferred compensation plan or retirement benefits . . . which constitutes marital property . . . ." (Emphasis added). "Virginia's statutory scheme of equitable distribution does not have a presumption

- 15 -

favoring an equal distribution of assets."  Alphin v. Alphin, 15 Va. App. 395, 404, 424 S.E.2d 572, 577 (1992) (citation omitted).  The trial court may consider under Code § 20-107.3(A)(2) and (E) the unequal efforts of the parties toward the acquisition of their respective retirement plans and, accordingly, grant to them their respective plans.  See Artis v. Artis, 10 Va. App. 356, 362, 392 S.E.2d 504, 507-08 (1990); see also Keyser v. Keyser, 7 Va. App. 405, 413, 374 S.E.2d 698, 702 (1988) (stating that "by listing the factors listed in Code § 20-107(E), the legislature envisioned that consideration of the factors to various properties could justify different equities in each of the properties").  By classifying the respective pensions as marital property, the court determined that each spouse had rights and equities in the other's pension, but by awarding each their respective pensions, the court determined that their individual efforts in accumulating their pensions justified their receiving the major portion of their own respective pension, thereby justifying an award to each of his and her pensions.  Therefore, we cannot say the trial court's refusal to award wife a percentage of husband's 401K was an abuse of discretion or unsupported by the evidence.  See Zipf v. Zipf, 8 Va. App. 387, 393 n.2, 382 S.E.2d 263, 266 n.2 (1989) (holding that the division of marital property is a matter committed to the sound discretion of the trial court).

C. Spousal Support

Wife contends that the trial court erred in failing to award her spousal support. She argues that the court erred in finding that she has the ability to obtain full-time employment earning as much as husband. Wife asserts that obtaining employment would be prohibitive because of the child care expenses she would incur. She requests that she be awarded, at a minimum, spousal support equal to the child care expenses she would incur if she were working and incurring such expenses.

In awarding spousal support, "the law's aim is to provide a sum for such period of time as needed to maintain the spouse in the manner to which the spouse was accustomed during the marriage, balanced against the other spouse's ability to pay." Blank v. Blank, 10 Va. App. 1, 4, 389 S.E.2d 723, 724 (1990) (citation omitted).

> In awarding spousal support, the chancellor must consider the relative needs and abilities of the parties. He is guided by the . . . factors that are set forth in Code § 20-107.1. When the chancellor has given due consideration to these factors, his determination will not be disturbed on appeal except for a clear abuse of discretion.

Collier v. Collier, 2 Va. App. 125, 129, 341 S.E.2d 827, 829 (1986) (citation omitted); see also Howell v. Howell, 31 Va. App. 332, 351, 523 S.E.2d 514, 524 (2000) (finding that a "spousal support award is subject to the trial court's

- 17 -

discretion and will not be disturbed unless plainly wrong or without evidence to support it").

The trial court held that wife shall receive a reservation of spousal support and that husband shall not receive a reservation. The commissioner in recommending that wife merely receive a reservation stated:

> This marriage was a eight year marriage approximately, and both parties equally have the good health and ability to earn income. . . . [Wife] is now providing almost 100% . . . of the non-monetary contributions towards the well being of their family, without much if any support or assistance from [husband] . . . . My careful consideration of the criteria enumerated, in reference to spousal support in the Virginia Code, shows that [wife] shall receive a reservation of spousal support . . . .

We hold that the trial court's failure to award wife spousal support is not supported by the evidence. "Among the other statutory factors, the trial court must evaluate the earning capacity of both parties." Barker, 27 Va. App. at 528, 500 S.E.2d at 244. Although wife has a master's degree in business administration, the record shows that wife does not work outside of the home because all three of the parties' children are below school age. As the commissioner noted, wife provides nearly 100% of the non-monetary contributions to rearing and attending the three children. The record fails to show that wife has income sufficient to meet her needs or to provide the basic necessities. Code § 20-107.1(E)(8) requires the trial court to consider the

- 18 -

provisions made with regard to the marital property under Code § 20-107.3 in fashioning a spousal support award.  Although the evidence shows that wife has substantial assets, it fails to show that the assets had income generating potential.  Moreover, the size of the equitable distribution award, while a factor, is not dispositive; wife was awarded that to which she was entitled under the law, "without regard to need or earning capacity."  Gottlieb, 19 Va. App. at 85, 448 S.E.2d at 671 (holding that wife's $600,000 lump sum equitable distribution award is not dispositive of her spousal support award).  Therefore, we hold that the trial court erred in not awarding spousal support in an amount at least equal to that necessary to pay child care expenses that would enable wife to seek employment.  Accordingly, the trial court is instructed to reconsider the award of spousal support on remand.

### D.  Husband's Imputed Income

First, wife contends that the trial court erred by failing to impute $90,000 annual income to husband because he voluntarily was under-employed.  Next, wife contends that even if the commissioner was correct in imputing $50,000 annual income to husband, the recommended monthly child support obligation of $1,027.20 was erroneously calculated using an annual income of $35,000 rather than $50,000.

"Imputation of income is based on the principle that a spouse should not be allowed to choose a low paying position that penalizes the other spouse or any children entitled to support." Calvert v. Calvert, 18 Va. App. 781, 784-85, 447 S.E.2d 875, 876-77 (1994). "A reduction in income resulting from a voluntary employment decision does not require a corresponding reduction in the payor spouse's support obligations, even if the decision was reasonable and made in good faith." Stubblebine v. Stubblebine, 22 Va. App. 703, 708, 473 S.E.2d 72, 74 (1996) (en banc) (citing Antonelli v. Antonelli, 242 Va. 152, 156, 409 S.E.2d 117, 119-20 (1991)). "The decision to impute income is within the sound discretion of the trial court and its [decision] will not be reversed unless plainly wrong or unsupported by the evidence." Blackburn v. Michael, 30 Va. App. 95, 102, 515 S.E.2d 780, 784 (1999) (citation omitted).

The trial court imputed $50,000 annual salary to husband, finding that he was voluntarily under-employed. At the time husband voluntarily terminated his employment with Hungerford Mechanical in May 1997, he was earning a base salary of $50,000 per year plus a bonus, consisting of a ten percent commission on the net profit from the fire protection department. Currently, husband is employed at Commonwealth Sprinkler earning $35,000 per year. Although the trial court found that husband's current salary is $35,000, for purposes of determining husband's child

- 20 -

support obligation and as the basis for deviating from the guidelines, the court imputed to husband $50,000 annual income. In his interim report dated February 13, 1998, the commissioner found that "a $50,000.00 salary, is the correct amount of income that [husband] can earn and is not earning through his own fault and that his current $35,000.00 salary is not relevant to this issue."

We hold that the trial court did not err by imputing $50,000 income to husband. Husband's former employer testified that it was husband's decision to leave his employment with Hungerford Mechanical and, but for that decision, husband would still be employed with the company. Although the evidence establishes that, while employed at Hungerford Mechanical, husband earned yearly bonuses between $7,000 and $26,000 in addition to his $50,000 base salary, the additional income not only fluctuated greatly, but it was not guaranteed. Further, husband's employer testified that employees were only eligible for bonuses if they were employed with the company at the end of the calendar year.

Code § 20-108.1(B) provides that there shall be a rebuttable presumption that the amount of the award which resulted from the application of the guidelines set out in Code § 20-108.2 is correct. The provision further provides:

> In order to rebut the presumption, the court shall make written findings in the

order, which findings may be incorporated by reference, that the application of such guidelines would be unjust or inappropriate in a particular case.  The finding that rebuts the guidelines shall state the amount of the support that would have been required under the guidelines, shall give a justification of why the order varies from the guidelines, and shall be determined by relevant evidence pertaining to the following factors affecting the obligation, the ability of each party to provide child support, and the best interests of the child:  [including] . . .  Imputed income to a party who is voluntarily unemployed or under-employed . . . .

Accordingly, the trial court must calculate the presumptive amount of the support award and, if the court deviates based on one of the factors, the court shall give a justification as to why the order varies from the guideline amount.

Here, the court imputed $50,000 annual income to husband. The court also determined, as it was required to do, the presumptive guideline amount based upon husband's actual salary of $35,000, which amount was $1,027.20, consisting of $849.20 from the guidelines and $178 for the children's medical insurance premium.  See Farley v. Liskey, 12 Va. App. 1, 5, 401 S.E.2d 897, 899 (1991) (stating that gross income as used in the statute includes only actual income and imputed income is but a factor to consider only after the presumptive amount is determined).  However, although the trial court imputed income of $50,000 as the justification for deviating from the $35,000 guideline amount, the court, nevertheless, erroneously awarded

$1,027.20, which was the presumptive amount based on $35,000, rather than $1,294, the amount based upon a $50,000 imputed salary.

While the commissioner's worksheet determined the presumptive amount under the guidelines, the court order failed to state the presumptive guideline amount. Furthermore, while the court made clear that it was imputing a $50,000 income to husband as the basis for deviating from the guidelines, the order did not make explicit findings regarding the deviation. See Richardson v. Richardson, 12 Va. App. 18, 21-23, 401 S.E.2d 894, 896-97 (1991). Rather, the court merely stated the amount of husband's monthly support obligation, which amount was erroneous based upon an actual income of $35,000.

Accordingly, we find that the trial court's ruling imputing $50,000 annual income to husband was not an abuse of discretion, but to the extent that the court miscalculated the support obligation and failed to make explicit findings, on remand the court shall redetermine the amount of child support based on the finding of $50,000 imputed income and accordingly enter its order nunc pro tunc.

E. Alleged Waste of Marital Assets by Husband

Wife contends that the trial court erred in finding that husband did not waste the $26,000 bonus earned before the parties separated but disbursed in March 1997, after the parties

- 23 -

separated.  Wife further contends that the trial court erred in failing to find that husband wasted the $8,000 proceeds from the sale of the parties' vehicle.  Wife argues that husband failed to meet his burden of proving that the funds were used for a proper purpose.

The trial court held that "[t]he bonus check Husband received after the separation, though earned by Husband during the marriage, was primarily used for attorney fees.  As there are no funds left to be divided, there will be no division of these funds."

Waste is defined as the "dissipation of marital funds in anticipation of divorce or separation for a purpose unrelated to the marriage and in derogation of the marital relationship at a time when the marriage is in jeopardy."  Booth v. Booth, 7 Va. App. 22, 27, 371 S.E.2d 569, 572 (1989) (citation omitted). "Once the aggrieved spouse shows that marital funds were withdrawn or used after the breakdown, the burden rests with the party charged with dissipation to prove that the money was spent for a proper purpose."  Clements v. Clements, 10 Va. App. 580, 586-87, 397 S.E.2d 257, 261 (1990) (citation omitted).  "We have previously held that marital funds spent for living expenses, attorney's fees for the divorce proceedings, and other necessities of life while the parties are separated do not constitute dissipation."  Anderson v. Anderson, 29 Va. App. 673,

695, 514 S.E.2d 369, 380 (1999) (citing Decker v. Decker, 17 Va. App. 12, 19, 435 S.E.2d 407, 412 (1993); Alphin, 15 Va. App. at 403, 424 S.E.2d at 576).

Husband does not dispute that he retained the $26,000 bonus and $8,000 of the $11,000 proceeds from the sale of his Ford Explorer. However, he testified that he spent $10,000 of the bonus and $3,000 of the sale proceeds for attorney's fees. Therefore, because husband demonstrated that these funds were not used for an improper purpose, the trial court did not err in finding that husband did not commit waste. However, husband failed to show that the remainder, or $21,000, was used for a proper purpose. Moreover, there was ample evidence in the record showing that husband dissipated the remainder of the funds. The evidence proved that husband vacated the marital residence and that it sat vacant when he rented and moved into an apartment with his paramour. Although he stated that his paramour would reimburse him for expenses when she could, he admitted that he paid all of the expenses, including rent, utilities, country club dues, health insurance premiums, and monthly car payments for his paramour's vehicle. Husband also testified that he used some of the funds from the bonus to make the down payment for one of his two Mercedes Benz automobiles and to apply to credit card debt. Accordingly, we find that the trial court erred in finding that husband did not dissipate that portion of the bonus he received

and that portion of the proceeds from the sale of the vehicle that he failed to account for, as was his burden. Accordingly, on remand, the trial court shall include the $21,000 as a marital asset in recalculating the equitable distribution award.

## F. Attorney's Fees

Wife contends that the trial court erred in failing to award attorney's fees. She argues that because husband used marital funds to pay his attorney's fees, the court, at a minimum, should have awarded her a sum equal to that amount of marital funds husband used, which was $13,000. Further, wife argues that she is entitled to attorney's fees because husband, in defending the suit, advanced many "baseless" positions.

"An award of attorney's fees to a party in a divorce suit is a matter for the exercise of the trial court's sound discretion after consideration of the circumstances and equities of the entire case." Davis v. Davis, 8 Va. App. 12, 17, 377 S.E.2d 640, 643 (1989) (citation omitted).

Here, the evidence proves that husband spent at least $13,000 of marital assets for attorney's fees. Husband testified that of the $26,000 bonus he earned during the marriage while employed at Hungerford Mechanical, he spent $10,000 on attorney's fees. Further, he testified that of the $8,000 proceeds from the sale of the Ford Explorer, which was a martial asset, he spent $3,000 on attorney's fees. The record

reflects that wife has adequate financial resources to pay her own litigation expenses; however, the record indicates that wife borrowed money to pay her attorney's fees while husband used marital assets to pay his attorney's fees.  Because the trial court must reconsider the equitable distribution award for the reasons previously stated, the court shall reconsider the wife's request for attorney's fees in light of the foregoing observations.

<u>Affirmed, in part,</u>
<u>reversed, in part,</u>
<u>and remanded.</u>