COURT OF APPEALS OF VIRGINIA


Present: Chief Judge Fitzpatrick, Judges Elder and Humphreys
Argued at Alexandria, Virginia


DENNIS G. KING

OPINION BY
v.    Record No. 2071-02-4    CHIEF JUDGE JOHANNA L. FITZPATRICK
                              APRIL 1, 2003
MARIAN R. KING


FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
James H. Chamblin, Judge

Christine Mougin-Boal (Paice & Mougin-Boal,
P.C., on briefs), for appellant.

Peter W. Buchbauer (James J. McGuire;
Buchbauer & McGuire, P.C., on brief), for
appellee.


In this domestic appeal, husband contends the trial court erred in awarding wife (1) one half of the parties' 1999 federal and state tax refunds; (2) a reimbursement of $921.66 for personal property; and (3) a portion of her attorney's fees. For the reasons that follow, we affirm the trial court's personal property award; we reverse the trial court's award of the 1999 tax refunds and attorney's fees, and remand for an award consistent with this opinion.

"On appeal, we construe the evidence in the light most favorable to wife, the prevailing party below, granting to her evidence all reasonable inferences fairly deducible therefrom." Donnell v. Donnell, 20 Va. App. 37, 39, 455 S.E.2d 256, 257 (1995) (citing McGuire v. McGuire, 10 Va. App. 248, 250, 391

S.E.2d 344, 346 (1990)).[1]  The essential facts are undisputed.
The parties were married on September 19, 1998, and they have one
child.  Prior to the marriage, on January 10, 1998, the parties
executed a comprehensive Pre-Marital Agreement (agreement), which
expressly outlined their intention to maintain their separate
property as separate after the marriage.[2]

Husband's separate estate included any and all income and
earnings[3] acquired during the marriage, as well as a house in
Kure Beach, North Carolina[4] (beach property).  Additionally, the
parties expressly agreed that any appreciation in the beach
property or any additional property acquired from the proceeds,
equity or income from the beach property would remain husband's
separate property.  The parties further agreed that any
liabilities arising from the beach property would be husband's
separate responsibility and would be paid with separate funds.
The beach property sustained substantial damage in 1999 during
Hurricane Floyd, resulting in a $127,317 diminution in value and
a $25,000 loss of rental income.

The parties separated on March 7, 2000.  Despite their
separation, the parties filed joint tax returns with the federal

---

[1] There is no transcript of the trial.  The record before us
is a statement of facts, and the parties are limited to the
recitations in the statement.

[2] Neither party disputes the validity of the agreement.
Instead, their dispute turns on the appropriate application of
the agreement to the disputed property.

[3] Pre-Marital Agreement ¶10.

[4] Pre-Marital Agreement ¶8.

and state taxing authorities for tax year 1999.[5] On the joint returns, the parties claimed the loss to the beach property. By claiming this loss, the parties generated a federal tax refund of $25,447 and a state refund of $8,526. They agreed to claim the loss on their joint tax returns after they calculated their taxes without including the loss and determined they would have had a tax liability of at least $9,779 if they did not claim the loss.[6] Both the federal and state refund checks were issued to the parties jointly. Because they could not agree on how the refunds should be allocated, the parties had not negotiated the refund checks when wife filed the instant divorce suit.

Wife filed her bill of complaint for divorce on September 2, 2001 and requested that the trial court determine, inter alia, a proper division of: the 1999 federal and state tax refunds, the cost of a mower deck for a tractor purchased during the marriage, and some shelving and storage containers. At their ore tenus hearing, both parties asked the trial court to make an award of the disputed property pursuant to the terms of the agreement. At the hearing, husband offered two joint tax returns into evidence, one calculating the liability without claiming the loss to the beach property and the one the parties filed, which generated the disputed refunds. Additionally, husband offered into evidence

_____

[5] The record also showed that the parties filed joint tax returns in tax year 1998; but is silent as to how any refunds or liabilities were apportioned between them.

[6] The federal tax liability would have been $9,779; the record is silent regarding any potential liability to the Commonwealth. In both cases, wife's brother-in-law prepared the returns and neither party disputes the accuracy of these numbers in the statement of facts.

"dummy" tax returns using the "Married, filing separate" tax status that showed that husband would have received a federal refund of $14,987 and a state refund of $6,006 for tax year 1999 had he filed separately. Husband also contested the value of the personal property.

In a letter opinion, the trial court found that even though the losses that gave rise to the refund were generated by husband's separate property, the tax refunds were jointly-titled marital property that were equally owned by the parties, pursuant to the terms of the agreement. Although the trial court acknowledged that this award was not "fair" and possibly not compelled by the express terms of the agreement, it "fe[lt] compelled to decide this issue as argued by the parties." The trial court further ordered husband to pay wife a total of $921.66 for the mower deck and the storage items. Finally, the trial court awarded wife a portion of her attorney's fees as the prevailing party, as provided for in the agreement. Husband appealed.

I.  1999 Income Tax Refunds

Husband first contends that the trial court erred in finding that the federal and state tax refunds were equally owned marital property. Husband argues that because the refunds are directly attributable to the losses sustained by his separate property, he was entitled to the entire refund in accordance with paragraph 8 of the agreement. Wife counters that the checks themselves, regardless of the reason for the

refund, were issued in joint names.  Thus, the funds became joint property acquired during the marriage and entitled her to an equal division of the refunds in accordance with paragraph 14(a).  Wife's argument, however, fails to give effect to the express terms of the parties' agreement, specifically paragraphs 10 and 13.

"Antenuptial agreements, like marital property settlements, are contracts subject to the rules of construction applicable to contracts generally, including the application of the plain meaning of unambiguous contractual terms."  Pysell v. Keck, 263 Va. 457, 460, 559 S.E.2d 677, 678 (2002).  "When a written marital agreement is presented, a court applies the same rules of formation, validity and interpretation used in contract law, except where specified by the Code."  Shenk v. Shenk, 39 Va. App. 161, 170, 571 S.E.2d 896, 901 (2002) (internal citations and quotations omitted).

> A well-settled principle of contract law dictates that where an agreement is complete on its face, is plain and unambiguous in its terms, the court is not at liberty to search for its meaning beyond the instrument itself.  A contract is not deemed ambiguous merely because the parties disagree as to the meaning of the language they used to express their agreement."

Ross v. Craw, 231 Va. 206, 212-13, 343 S.E.2d 312, 316 (1986) (internal citations and quotations omitted).  Furthermore, "courts cannot read into contracts language which will add to or take away the meaning of words already contained therein."  Pysell, 263 Va. at 460, 559 S.E.2d at 678.  "In reviewing the agreement, we must gather the intent of the parties and the

meaning of the language . . . from an examination of the <u>entire</u> instrument, giving full effect to the words the parties actually used." <u>Layne v. Henderson</u>, 232 Va. 332, 337-38, 351 S.E.2d 18, 22 (1986) (emphasis added).

Under the express terms of the agreement, each party clearly retained as his or her separate property all the assets owned at the time they executed the agreement. The designation of separate property extended to all increases in value and changes in form. Specifically, Paragraph 8 states:

> DENNIS G. KING and MARIAN R. KERN agree that any interest, present or future, legal or equitable, vested or contingent, in all property, real, personal or other, wherever situated, including without limitation, the property set out in the attached schedules belonging to DENNIS G. KING at the commencement of the marriage and any property acquired by DENNIS G. KING during the marriage by gift, bequest, devise, survivorship, descent, purchase, as the beneficiary of a trust or by any other means, including property that is acquired during the marriage as Separate Property in Paragraphs 10 and 14, shall be and remain his Separate Property. The parties further acknowledge and agree that all interest, dividends, rents, issues, profits, increases, appreciation, and income from the Separate Property of DENNIS G. KING and any other assets purchased or otherwise acquired with the foregoing assets or proceeds shall be and remain DENNIS G. KING's separate property. The parties agree that a change in the form of DENNIS G. KING's assets as a result of the sale, exchange, investment, reinvestment, hypothecation, or other disposition of such assets, or a change of form of doing business shall not constitute any change of property characterization, and such assets shall remain DENNIS G. KING's Separate Property regardless of any change

- 6 -

of form.  MARIAN R. KERN shall have no right, title, interest, lien, or claim under the laws of any state or foreign country in or to any of DENNIS G. KING's Separate Property assets.

  *  *  *  *  *  *  *

The co-mingling of any property with the Separate Property of MARIAN R. KERN shall not cause the loss of the identity of the property, and it shall remain DENNIS G. KING's Separate Property.

The parties understand and agree that it is impossible to foresee all appreciation, changes in value or income.  The lack of foreseeability shall not be the basis to avoid provisions of this Agreement.

Pre-Marital Agreement ¶8.[7]  The agreement further stipulates that each party will retain his or her income as separate property during the marriage.

> The parties agree that any earnings or
> income of either party of whatsoever nature,
> kind or source before and after the
> marriage, including but not limited to
> distributions from trusts, salary, increases
> in value, appreciation, capital gains,
> interest, dividends, bonuses, stock options,
> deferred compensation, and pension,
> profit-sharing and retirement benefits shall
> be the Separate Property of the party
> earning or acquiring such earnings or income
> as though the contemplated marriage had
> never occurred.  There shall be no
> allocation made of any such earnings or
> income between community property and
> Separate Property as such earnings or income
> shall be entirely the Separate Property of
> the party earning or acquiring the same.
>
> The parties agree that it is impossible to
> foresee all appreciation, changes in value
> or income.  The lack of foreseeablility
> shall not be the basis to avoid provisions
> of this Agreement.

Pre-Marital Agreement ¶10.  Finally, the agreement provides:

> All obligations incurred due to or as a
> consequence of the purchasing, encumbrance,
> or hypothecation of Separate Property of
> either party, whether real, personal or
> mixed, and all taxes, insurance premiums,
> and maintenance costs arising from or
> related to the Separate Property of either
> party shall be paid from such party's
> Separate Property income or from such

---

[7] Paragraph 9 makes the same provision for wife's separate property.

> party's separate property funds at such
> party's election.

Pre-Marital Agreement ¶13 (emphasis added).

These provisions make clear that the parties intended that every aspect of their separate assets, including "changes in value," would remain separate property. Although the language of the agreement specifically addresses increases in value, a "change in value" need not be a positive one. Indeed, the agreement expressly states that unforeseen changes in value do not void other operative provisions of the agreement. Accordingly, the loss on the beach property was an aspect of husband's separate property. This determination, however, does not end our inquiry.

We have not yet addressed the precise question of whether filing a joint tax return necessarily converts any refund generated by the separate property of one party into marital property. We have, however, had the opportunity to consider an analogous situation where one spouse was the sole wage earner. In Decker v. Decker, 17 Va. App. 12, 435 S.E.2d 407 (1993), we held that the wife, who had "no taxable obligation or income," was not entitled to half of the subsequent tax refund. Id. at 21, 435 S.E.2d at 414. "[I]t offends the sense of fairness that the [wife] . . . should somehow receive a [substantial] refund check . . . merely because of the technical form in which the tax vouchers were filed, which filings were required because of the income reported by and attributable to [husband]." Id. The analysis adopted in Decker is equally applicable to the instant case and is consistent with the intent of the parties' agreement

- 9 -

to keep all aspects of the parties' separate holdings in fact separate.

The Supreme Court of Georgia in <u>Schwartz v. Schwartz</u>, 561 S.E.2d 96 (Ga. 2002), is also instructive. In that case, the court considered whether wife was entitled to one-half of an income tax refund when the parties' divorce settlement agreement stated that husband would pay all state and federal income taxes for 1997 and none of the income would be considered the wife's income for tax purposes. <u>Id.</u> at 97. In <u>Schwartz</u>, the wife "argue[d] that if taxes were still owed after withholding, then [husband] would have to pay them, but if a refund was in order, he would have to divide it with her." <u>Id.</u> at 98. The court held that where the parties have contractually agreed for only one of them to be liable for taxes, only that party was entitled to reap the benefit of a refund. "To construe the agreement as [wife] urges would clearly result in a windfall to her that was not contemplated by the parties." <u>Id.</u>

Like <u>Schwartz</u>, the agreement expressly places the onus for any liability "arising from or related to" the beach property on husband. <u>See</u> Pre-Marital Agreement ¶13. Accordingly, any benefit that derives from the beach property should go to husband just as any liability would. An equal division of the loss to the beach property would, as in <u>Schwartz</u>, "result in a windfall to [wife] that was not contemplated by the parties." <u>Schwartz</u>, 561 S.E.2d at 98.

> The filing of a joint income tax return must
> . . . be viewed in the circumstances of the
> general financial background of the
> marriage; moreover, it should be construed
> as a response to the tax statutes designed

> to confer a benefit to the married couple.
> In itself the exercise of the option by the
> spouses to file a joint return should not be
> interpreted as the conclusive memorial of
> the intent to create a joint tenancy or to
> make a gift by one for the other. We should
> look beyond the simple execution of the
> return to the circumstances of the marriage.

Angelo v. Angelo, 428 N.Y.S.2d 14, 17-18 (N.Y. App. Div. 1980).

The financial background of this marriage is memorialized in the parties' agreement. Clearly they intended all separate assets to remain separate, even if co-mingled with marital assets and all earning and income on these assets were to be segregated. They took the further step of agreeing that all their earnings and income would also remain separate property.

"An income tax refund is nothing more that a return of income." Phillips v. Phillips, 351 S.E.2d 178, 180 (S.C. App. 1986). Where, as here, the parties have expressly agreed that their respective incomes are and remain separate property, it follows that refunds specifically attributable to that separate property should also be part of each party's separate estate. As the trial court noted, what is required in this case "is similar to tracing in equitable distribution cases." We agree that tracing is the appropriate method to determine the correct distribution of the tax refunds. To the extent that husband is able to show that any of the joint refunds are directly traceable to his earnings and income, he is entitled to those funds as his separate property. Here, the "dummy" returns under the "Married, filing separately" status that husband offered into evidence provided the trial court with an appropriate basis to trace what was properly attributable to husband's separate estate. The

trial court should have given husband a credit for the portion of the refunds he was thus able to trace to his separate income.

We are, nevertheless, cognizant of the fact that "Married, filing joint" is a special tax status that "reflects the view of the Congress that the family should be considered as both a social and economic unit." Angelo, 428 N.Y.S.2d at 16. Indeed, "the parties were no doubt swayed by the pecuniary advantage to the family as a whole in filing jointly." Nill v. Nill, 584 N.E.2d 602, 605 (Ind. App. 1992). "But where the advantages are taken, the burdens must also be accepted. The statute authorizing the filing of the marital joint return provides that upon filing, the liability of each spouse is joint and several." Angelo, 428 N.Y.S.2d at 16. Therefore, we hold that any portion of the refunds in excess of what husband is able to trace to his separate earnings and losses is marital property and should be distributed in accordance with Paragraph 14 of the agreement, which provides in pertinent part:

> All property acquired during the marriage (but excluding property defined as separate under this Agreement) shall be owned as follows irrespective of monetary or non-monetary contributions made by either party:
>
> (1) If there is written evidence of title such as a deed, will, trust, car title, bank account, brokerage account, trust account, management agreement, bill of sale, etc., then such property shall be owned in accordance with the written evidence of title. If property is jointly titled, it shall be equally owned. If property is individually titled, it shall be the sole property of such party possessing such title and deemed his or her Separate Property.

Pre-Marital Agreement ¶14(a)(1).  This distribution gives full effect to all the provisions of the parties' agreement, while recognizing the benefit to husband and the consequences to wife of filing joint tax returns.  Accordingly, we remand the question of the tax refunds to the trial court for an award consistent with this opinion.

## II.  Personal Property Award

Husband next contends that the trial court erred in awarding wife $651.15 for a mower deck and $270.51 for storage

bins and shelving because wife did not present evidence to support the values assigned to these items.[8]

"A trial court's determination of matters within its discretion is reversible on appeal only for an abuse of that discretion, . . . and a trial court's decision will not be set aside unless plainly wrong or without evidence to support it." Albert v. Albert, 38 Va. App. 284, 294, 563 S.E.2d 389, 394 (2002). "[W]hen a court hears evidence at an ore tenus hearing, its decision is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Goodhand v. Kildoo, 37 Va. App. 591, 599, 560 S.E.2d 466, 466 (2002).

> It is generally recognized that the opinion testimony of the owner of property, because of his relationship as owner, is competent and admissible on the question of the value of such property, regardless of his knowledge of property values. It is not necessary to show that he was acquainted with the market value of such property or that he is an expert on values. He is deemed qualified by reason of his relationship as owner to give estimates of the value of what he owns.

Haynes, Executrix v. Glenn, 197 Va. 746, 750, 91 S.E.2d 433, 436 (1956).

At trial, wife presented evidence that she purchased the mower deck for $651.15. Although husband argued the item was no longer worth that amount, he failed to offer an alternative value for the trial court to consider. The trial court found as a fact

---

[8] We note that the approximate cost, excluding any attorney's fees, to address this issue exceeds that total amount the trial court awarded.

that the tractor "was acquired with the joint credit of the parties. Hence the tractor is jointly owned." Under paragraph 14 of the agreement, wife was entitled to an equal division of the value of the tractor. Wife, however, requested "merely the return of the $651.15 she contributed to the purchase of the tractor." The trial court further found that the tractor was worth more than $1,302.30. Husband offered no proof to the contrary. The only evidence in the record supports the trial court's finding.

The shelves and storage containers were wife's separate property under paragraph 9 of the agreement. At trial, wife stated that husband asked her to leave these items in the marital home when she left and that husband agreed to pay her $270.51 for the items. The trial court found that husband agreed to pay this amount and had not done so. Accordingly, the award for the personal property is affirmed.

### III.  Attorney's Fees Award

Lastly, husband argues the trial court erred in awarding wife her attorney's fees as the prevailing party under the agreement. Because we reverse the trial court on the issue of the tax refunds, the amount of attorney's fees award must also be recalculated.

The parties' agreement includes a provision for an award of counsel fees in the event of a dispute.

> Should any party hereto retain counsel for
> the purpose of enforcing or preventing a
> breach of any provision hereof including but
> not limited to by instituting any action or
> proceeding to enforce any provision hereof
> for damages by reason of any alleged breach

> or any provision hereof for a declaration of
> such parties' [sic] rights or obligations
> hereunder or for any judicial remedy, then
> the prevailing party shall be entitled to be
> reimbursed by the losing party for all costs
> and expenses incurred thereby including but
> not limited to reasonable attorney's fees,
> expert fees and other reasonable costs for
> the services rendered to such prevailing
> party.

Pre-Marital Agreement ¶20. The trial court awarded wife $1,885 in attorney's fees as the prevailing party under the terms of the agreement. Because we reverse and remand for further consideration of the disbursement of the tax refund checks, we also reverse the attorney's fees award and remand for an award consistent with this opinion.[9]

<u>Affirmed in part,
reversed in part
and remanded.</u>

---

[9] Wife requests an award of attorney's fees incurred on appeal pursuant to paragraph 20 of the agreement. Husband made no request for appellate fees. As wife was not the "prevailing party," paragraph 20 is not implicated. Based on the record as a whole, we decline to award additional appellate attorney's fees.