COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges Humphreys and Friedman
Argued at Lexington, Virginia

JOEY DEWAYNE ROACH

v.      Record No. 0921-21-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
CHIEF JUDGE MARLA GRAFF DECKER
JULY 19, 2022

FROM THE CIRCUIT COURT OF PITTSYLVANIA COUNTY
Timothy W. Allen, Judge

Joseph A. Sanzone (Sanzone & Baker, L.L.P., on brief), for
appellant.

Leah A. Darron, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


Joey Dewayne Roach appeals his two convictions for receiving stolen property in violation

of Code § 18.2-108. The appellant contends that the trial court erred in finding the evidence

sufficient to support the convictions. He also argues that the trial court erred in admitting testimony

pertaining to the value of the stolen items. For the reasons that follow, we affirm the convictions.

I. BACKGROUND[1]

On November 1, 2019, Officer Michael Morris of the Virginia Department of Wildlife

Resources went to a farm in Pittsylvania County owned by the appellant's father to investigate

the theft of two motorboats. Bedie Bailey had purchased the boats, a 1990 Chaparral and a 1986

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] In accordance with familiar principles of appellate review, the facts are recited in the light most favorable to the Commonwealth, as the prevailing party at trial. *See Sarka v. Commonwealth*, 73 Va. App. 56, 59 (2021); *Clanton v. Commonwealth*, 53 Va. App. 561, 564 (2009) (*en banc*).

Glassport, in the mid-1990s for over $5,000 each. In the summer of 2019, Bailey kept the boats at his parents' lake house in Pittsylvania County and used them over the course of the summer. He discovered the boats were missing in October 2019. Bailey did not know the appellant or give him permission to take or use his boats or boat trailers.

When Officer Morris arrived at the Roach farm, he saw the stolen Glassport hitched to a white Ford pickup truck. The appellant was at the farm and told Morris that the truck was his. He said that Marvin Layne had brought two motorboats to the farm six months before and said he needed a place to store them. The appellant also stated that he had learned "a few days prior" that the boats were stolen and told Layne to remove them. According to the appellant, Layne had moved the Chaparral from the premises to an unknown location earlier that day and wanted Roach to "haul" the Glassport for him.

After talking with Layne on November 2, 2019, the next day, Morris met with the appellant again on November 3, 2019. During this meeting, the appellant told Morris that both boats had been at the farm for about two months and he, not Layne, had moved the Chaparral from the farm and "dump[ed]" it. Later on November 3, the appellant telephoned Morris and requested another meeting because he had not been "completely truthful" about the boat thefts. When they met the next day, the appellant told Officer Morris that Billy Barbour and Brian Dove had stolen the boats and brought them to the farm. He also said that Barbour and Dove had used the Chaparral's boat trailer to steal another boat.

At his trial, the appellant testified that the white Ford truck "belonged to the farm," rather than to him. He said that Dove was a laborer at the farm and had been there on November 1, 2019, "moving the boats around" before Morris arrived. The appellant claimed he did not know the boats were stolen until Morris arrested him. He testified that Morris asked him to find out who brought the boats to the farm. The appellant said that he knew Dove had brought the boats

- 2 -

but had "mixed up" Layne and Dove when he initially told Morris that Layne was responsible for the boats. He denied dumping any boats. He acknowledged, however, that he sometimes removed "stuff" from the farm property that people had "drop[ped] off" there. The appellant admitted that he was a convicted felon.

Both motorboats and trailers were returned to Bailey. He testified that he bought the boats in the "mid-90s."[2] He stated that he paid over $5,000 for each boat. Over the appellant's objection, Bailey testified that he would have sold the Chaparral on November 1, 2019, for over $5,000, "certainly" more than $500. He also testified that he would have sold the Glassport for "well over $500." Morris testified that the boats did not appear to have been used recently or to be in good condition.

The appellant argued that the trial court should not have considered Bailey's testimony regarding the price at which he would have sold the boats as evidence of their value. He also contended that the owner's value estimation was "impossible for a boat bought thirty years ago." In addition, the appellant challenged the sufficiency of the evidence to establish any connection between him and the theft of the boats or that he possessed the boats.

The trial court accepted Bailey's testimony as evidence of the value of the boats. It concluded that the appellant's testimony was not credible because he had made several contradictory statements to Officer Morris and then at trial. Accordingly, the court found the appellant guilty of receiving stolen property in excess of $500.[3]

---

[2] The Commonwealth entered photographs of the Glassport into evidence, but there were none of the Chaparral.

[3] The appellant had been charged with grand larceny of the boats, but the trial court granted the appellant's motion to strike the grand larceny charge and found him guilty of the lesser-included offense of receiving stolen property.

## II. ANALYSIS

### A. Sufficiency of the Evidence

The appellant contends that the evidence was insufficient to support the convictions for receiving stolen property. Primarily, he argues that merely "removing abandoned property from his father's farm" did not show "ownership or control" of the boats.

"When considering the sufficiency of the evidence, an appellate court views the evidence 'in the light most favorable to the Commonwealth, the prevailing party below.'" *Williams v. Commonwealth*, 71 Va. App. 462, 483 (2020) (quoting *Smallwood v. Commonwealth*, 278 Va. 625, 629 (2009)). This standard requires the Court to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn [from that evidence]." *Bagley v. Commonwealth*, 73 Va. App. 1, 26 (2021) (alteration in original) (quoting *Cooper v. Commonwealth*, 54 Va. App. 558, 562 (2009)).

On appeal, "[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it." *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). The appellate court "does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." *Id.* (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Instead, we ask only 'whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Secret*, 296 Va. at 228). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Id.* (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

In addition, determining witness credibility "is within the exclusive province of the [fact finder], which has the unique opportunity to observe the demeanor of the witnesses as they testify." *Dalton v. Commonwealth*, 64 Va. App. 512, 525 (2015) (quoting *Lea v. Commonwealth*, 16 Va. App. 300, 304 (1993)). The trier of fact "[i]s free to believe or disbelieve, in part or in whole, the testimony of any witness." *Bazemore v. Commonwealth*, 42 Va. App. 203, 213 (2004) (*en banc*); *see Rollston v. Commonwealth*, 11 Va. App. 535, 547 (1991). Further, "[i]n its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." *Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011) (quoting *Marable v. Commonwealth*, 27 Va. App. 505, 509-10 (1998)). "When 'credibility issues [have been] resolved by the [trial court as trier of fact] in favor of the Commonwealth, those findings will not be disturbed on appeal unless plainly wrong.'" *Towler v. Commonwealth*, 59 Va. App. 284, 291 (2011) (first alteration in original) (quoting *Corvin v. Commonwealth*, 13 Va. App. 296, 299 (1991)). "These principles apply . . . to bench trials no differently than to jury trials." *Vasquez v. Commonwealth*, 291 Va. 232, 249 (2016) (alteration in original).

It is under this standard of review that we consider the appellant's challenge to the sufficiency of the evidence supporting his convictions for receiving stolen property. Code § 18.2-108(A) states that "[i]f any person buys or receives from another person, or aids in concealing, any stolen goods or other thing, knowing the same to have been stolen, he shall be deemed guilty of larceny thereof, and may be proceeded against, although the principal offender is not convicted." A conviction under Code § 18.2-108 requires proof that property "was (1) previously stolen by another, and (2) received by [the] defendant, (3) with knowledge of the theft, and (4) a dishonest intent." *Shaver v. Commonwealth*, 30 Va. App. 789, 800 (1999) (quoting *Bynum v. Commonwealth*, 23 Va. App. 412, 419 (1996)). Guilty knowledge "is

sufficiently shown if the circumstances proven are such as must have made or caused the recipient of stolen goods to believe they were stolen." *Id.* at 800-01 (quoting *Reaves v. Commonwealth*, 192 Va. 443, 451 (1951)). Significantly, "[b]ecause larceny is a continuing offense, anyone who knows that personal property is stolen and assists in its transportation or disposition is guilty of larceny." *Williams v. Commonwealth*, 56 Va. App. 638, 643 (2010) (quoting *Hampton v. Commonwealth*, 32 Va. App. 644, 650-51 (2000)).

The appellant contends that the evidence did not prove he possessed the stolen boats. "Possession may be actual or constructive." *Bagley*, 73 Va. App. at 27. "[T]he issue of constructive possession 'is largely a factual one.'" *Smallwood*, 278 Va. at 631 (quoting *Ritter v. Commonwealth*, 210 Va. 732, 743 (1970)). To prove constructive possession, the Commonwealth must "present evidence of acts, statements, or conduct by the defendant or other facts and circumstances proving that the defendant was aware of the presence and character of the [property] and that the [property] was subject to his dominion and control." *Id.* at 630 (quoting *Bolden v. Commonwealth*, 275 Va. 144, 148 (2008)). "A person's ownership or occupancy of premises on which the subject item is found, proximity to the item, and statements or conduct concerning the location of the item are probative factors to be considered in determining whether the totality of the circumstances supports a finding of possession." *Hall v. Commonwealth*, 69 Va. App. 437, 448 (2018) (quoting *Wright v. Commonwealth*, 53 Va. App. 266, 274 (2009)).

In this case, the appellant's ever-changing and contradictory statements, in conjunction with other evidence, proved he possessed the two stolen boats. The appellant was present at the farm on November 1, 2019, when Officer Morris saw the Glassport there. The boat was hitched to a white Ford pickup truck, which the appellant initially claimed as his truck. At first, the appellant said that Layne brought the Glassport to the farm to store it six months earlier, well before the boats were missing. He suggested that Layne had wanted him to "haul" it away. He told Officer Morris during

- 6 -

their first encounter that he had learned the boats were stolen "a few days" before Morris's visit. Two days later, the appellant told Morris the boats had been at the farm for only two months, not six months. In contrast to the appellant's initial statement that Layne moved the Chaparral from the farm, he told Officer Morris at their second meeting that he had moved the Chaparral and "dump[ed]" it. On the same day as the second meeting, the appellant requested a third meeting with Morris because he had not been "completely truthful" with him. At that meeting, the appellant gave Morris yet another account of the events and circumstances. He said that Barbour and Dove, not Layne, stole the boats and brought them to the farm. At trial, however, the appellant told yet a different version of events. He testified that the white Ford truck belonged to the farm and he had not known the boats were stolen until after he was arrested.

The trial court found that there was "no doubt" the appellant knew the boats were stolen when he initially gave Morris misleading information about them. The court specifically found that portions of the appellant's testimony were incredible. The appellant's knowledge that the boats were stolen, his proximity to the stolen boats at his father's farm, his inconsistent statements to Officer Morris and at trial, and his actions in moving the Chaparral to another location and preparing to move the Glassport away from the farm, sufficiently proved that he knowingly possessed the stolen boats and exercised dominion and control over them as he aided in concealing them. *See Hall*, 69 Va. App. at 449-50 (holding that where the defendant denied at trial that she had made inculpatory statements to a police officer, "the totality of the circumstances" sufficiently proved that the defendant, a convicted felon, was guilty of possessing a firearm).

Proof that the appellant was in possession of the recently stolen boats "constituted prima facie evidence that [he] received the stolen goods with guilty knowledge and cast upon him the burden of going forward with evidence in explanation." *Roberts v. Commonwealth*, 230 Va. 264, 271 (1985). Although the appellant offered an explanation at trial, the trial court did not find him to

be credible, largely because his version of events changed four times. A "false or evasive account is a circumstance, similar to flight from a crime scene, that a fact-finder may properly consider as evidence of guilty knowledge." *Covil v. Commonwealth*, 268 Va. 692, 696 (2004). The trial court reasonably relied on the discrepancies in appellant's various statements in inferring the appellant's guilty knowledge. *See Parham v. Commonwealth*, 64 Va. App. 560, 567 (2015); *see also Roberts*, 230 Va. at 272 (holding that where the trier of fact rejected the defendant's hypothesis of innocence as unreasonable, the evidence was sufficient to support a conviction for possession of recently stolen goods); *Bynum*, 23 Va. App. at 420 (affirming conviction for receipt of stolen property where the record established that the defendant was found in possession of a stolen vehicle within hours of its theft and denied any connection to the car, but later admitted that he had exchanged drugs for the car). This, along with the other evidence, provided a sufficient basis for the factual findings.

Based on the record before us, we hold that the evidence was sufficient to prove beyond a reasonable doubt that the appellant constructively possessed the stolen boats.

## B. Admissibility of Evidence

The appellant argues that the trial court erred "by allowing improper and inadmissible testimony concerning the value of the property." He contends that "[v]alue in a larceny case can never be established" solely by the owner's testimony regarding the price at which he would have sold the boats on the day they were stolen.

"Decisions regarding the admissibility of evidence 'lie within the trial court's sound discretion and will not be disturbed on appeal absent an abuse of discretion.'" *Blankenship v. Commonwealth*, 69 Va. App. 692, 697 (2019) (quoting *Michels v. Commonwealth*, 47 Va. App. 461, 465 (2006)). The legal parameters of the abuse of discretion standard are well defined. An abuse of discretion can occur if the trial court fails "to consider a relevant factor that should have been given significant weight," attaches "significant weight to an irrelevant or improper factor,"

or "commits a clear error of judgment" when considering the appropriate factors. *Fields v. Commonwealth*, 73 Va. App. 652, 672 (2021). In addition, "by definition," a trial court "abuses its discretion when it makes an error of law." *Coffman v. Commonwealth*, 67 Va. App. 163, 166 (2017) (quoting *Commonwealth v. Greer*, 63 Va. App. 561, 568 (2014)). However, an abuse of discretion does not occur if reasonable jurists could differ about the correct result. *See Fields*, 73 Va. App. at 672. Consequently, a trial court's "ruling will not be reversed simply because an appellate court" may disagree. *Thomas v. Commonwealth*, 44 Va. App. 741, 753, *adopted upon reh'g en banc*, 45 Va. App. 811 (2005).

Receiving stolen goods is a larceny offense. Code § 18.2-108(A). As such, it constitutes grand larceny if the value of the stolen item is over a certain amount. *See* Code § 18.2-95; *Spratley v. Commonwealth*, 298 Va. 187, 194 (2019). Relevant here, the threshold for grand larceny was $500 in 2019 when the motorboat thefts occurred. *See* 2018 Va. Acts Chs. 764 & 765 (amending Code § 18.2-95). "Where the value of a thing 'determines the grade of the offense, the value must be alleged and the Commonwealth must prove the value to be the statutory amount.'" *Otey v. Commonwealth*, 71 Va. App. 792, 800 (2020) (quoting *Dimaio v. Commonwealth*, 46 Va. App. 755, 763 (2005)).

To this end, the Commonwealth introduced testimony from the owner about the boats' value. Bailey testified that he paid over $5,000 for each boat. When the prosecutor asked at what price Bailey would have sold the Chaparral on November 1, 2019, defense counsel objected. Counsel asserted that the price for which Bailey would have sold the boat was "speculation on value" and was not "a proper basis" for establishing that element. The trial court overruled the objection. Bailey then said that he was "not sure" of the NADA book value for the boat but "it would have been a substantial amount . . . over $5,000," and "certainly" would have

been over $500. Bailey also testified that he would have sold the Glassport on November 1, 2019, for "well over $500."

The value of a stolen item is based on its value when the theft occurred, and "the original purchase price may be admitted as evidence of its current value." *Parker v. Commonwealth*, 254 Va. 118, 121 (1997). "In determining the value of stolen property: [t]he test is market value, and particularly retail value." *Spratley*, 298 Va. at 195 (quoting *Robinson v. Commonwealth*, 258 Va. 3, 5 (1999)). "[F]air market value is the price property will bring when offered for sale by a seller who desires but is not obliged to sell and bought by a buyer under no necessity of purchasing." *Id.* (quoting *Robinson*, 258 Va. at 5-6).

Critical here is that "[i]t is generally recognized that the opinion testimony of the owner of property, because of his relationship as owner, is competent and admissible on the question of the value of such property, regardless of his knowledge of property values." *Otey*, 71 Va. App. at 800 (quoting *King v. King*, 40 Va. App. 200, 212 (2003)); *see Parker*, 254 Va. at 121 (stating that an owner's opinion testimony on the value of a stolen item "is competent and admissible on the issue of the [item's] value"). In addition, the Commonwealth does not need to prove that the owner "was acquainted with the market value of such property or . . . is an expert on value[]." *Otey*, 71 Va. App. at 800-01 (quoting *King*, 40 Va. App. at 212). Simply the status as owner of the stolen property renders a witness qualified to estimate the value of the item or items. *Id.* at 801.

Relying on *Walls v. Commonwealth*, 248 Va. 480 (1994), the appellant argues that the price at which Bailey testified he would have sold each boat was not admissible evidence of the boats' value. He contends the "exact question" the prosecutor asked Bailey was rejected in *Walls*. However, *Walls* is not instructive here. The basis for reversal in *Walls* was not the question itself but the lack of foundation for the witness's response. The witness in *Walls* was an

employee of the company from which two television sets had been stolen. *See id.* at 482-83. The witness was neither the owner of the property at issue nor was he sufficiently familiar with the property to qualify as an expert on its value. *See id.* Consequently, *Walls* differs significantly from the appellant's case because Bailey was the owner of the stolen motorboats.

Bailey was the boat owner, and consequently the trial court did not abuse its discretion in allowing his testimony as evidence of the value of the boats at the time of the offense. *See Otey*, 71 Va. App. at 800-01 (holding that evidence of value was sufficiently proved where the vehicle's owner testified that he estimated the vehicle's value to be $5,000).

To the extent that the appellant also challenges the sufficiency of the evidence to prove that each boat's value exceeded $500, we turn to examine the record. Bailey testified that although he was "not sure" of the "NADA book value" of the Chapparal, he thought that it would have been a substantial amount, over $5,000, and was certain that it was more than $500. He also testified that he "would [] have" sold the Glassport for "well over" $500. Bailey testified that he paid over $5,000 for each boat in the 1990s. The trial court heard this testimony and had a photograph of one of the boats before it. The court was permitted to consider this evidence, and it had sufficient evidence before it to determine that the value of each boat exceeded $500. *See id.*

### III.  CONCLUSION

The evidence is sufficient to support the convictions, and the trial court did not abuse its discretion by admitting Bailey's testimony as evidence on the value of the stolen boats. Thus, we affirm the appellant's convictions for receiving stolen property.

*Affirmed.*